Commonwealth ex rel. Milne *v.* Milne, Appellant.

Argued May 6, 1942.

Before Keller, P. J., Cunning-
ham, Baldrige, Rhodes, Hirt and Kenworthey, JJ.

The facts are stated in the opinion by WINNET, J., of the lower court, in part, as follows:

These proceedings arise from the petition of Frederica L. Milne for an increase in the support order against her husband, Caleb J. Milne, 3d, who, in accordance with the Act of March 5, 1925, P. L. 23, questions the court's jurisdiction over him. He claims (1) there is no lawful order against him which could be the basis of supplementary proceedings, and (2) even if there be the old decree or original jurisdiction, no lawful process has issued by which he can be made to answer the petition for an increase. He has set up in his petition the non-residence both of his wife and himself and the fact that the notice of the petition reached him by mail in Washington, D. C. His appearance is *de bene esse* to raise the question of jurisdiction.

This action was originally started in 1924 by a petition alleging desertion and non-support and praying for an order of support for the relator and her three minor children. A warrant of arrest issued, and upon hearing at which defendant was present, he was on February 25, 1924 ordered to pay $200 per month for the support of his wife and three children. On February 15, 1926, he applied to the court for a reduction and it was reduced to $150.

In May of 1926 the paternal grandfather was brought into the proceedings by citation, on the theory that the father, the defendant, could not properly support them. On May 5, 1926 the order of February 15, 1926 was amended to read: $150 per month for the support of wife only and vacated as to the children, the grandfather to pay $250 per month for the support of the children. This decree was the basis of an appeal to the Superior Court. *(Com. ex rel. v. Milne,* 90 Pa. Superior Ct. 68). On March 3, 1927 the Superior Court held that the grandfather could not be made to support the children as long as the father had an income and

the children were not likely to become public charges. The decree appealed from was reversed.

The reversal of the decree left the order of February 25, 1924 for $150 for support of the wife and three children in force. On June 6, 1932 the defendant appeared in court and at his request and on his petition the order was reduced to $75 per month because of his changed circumstances. Some four years later, in March of 1936, he again appeared in court and the order was again reduced to $60 per month for the support of the wife and one child.

On June 7, 1939 the defendant again appeared in this court and filed a petition asking that the order against him be vacated, alleging that the relator, the children and he were no longer residents of Pennsylvania. The court by order of July 19, 1939 refused the prayer of the petition. No appeal was taken from this order.

The record, therefore, discloses that the defendant was in court involuntarily once when he was brought in on the original petition, and voluntarily at least four times to ask for relief from the burden of the order. It is rather startling, therefore, to hear the contention made on his behalf that there is no decree in effect and no jurisdiction of him.

The contention that the reversal of the Superior Court left the record without any decree does not warrant a long or serious answer. The decree appealed from was that of May 5, 1926. The appellant was the grandfather and not the defendant. The reversal of the decree left the record where it stood before, with the decree of February 25, 1924 in full force and effect, from which defendant never took an appeal. As Judge KELLER stated *(Com. v. Milne,* supra, p. 69) "...... the case (on appeal) was entirely independent of any other proceedings before the court ...... (it) should have been separately docketed to distinct numbers and terms." The defendant's subsequent conduct in com-

ing into the jurisdiction time and again to ask relief because of changed circumstances, shows that at all times he acknowledged jurisdiction of the court and knew there was a decree against him.

Defendant's last appearance in court in 1939 was to vacate the order itself on the grounds of nonresidence of himself and the relator. The court refused his request and the effect of the refusal should ordinarily bar him from raising again the question of non-residence, as he does in his present petition. It is necessary, however, to discuss it, since the defendant raises one truly fundamental question. Is it necessary on a petition for an increase of a support order to issue the process provided by the act, a warrant of arrest, or is mere notice to the defendant sufficient? Here, again, the defendant should know by experience the answer. There must be mutuality in the operation of the law. What is required of one should be required of the other. If the defendant was not required to issue process to bring the relator in when he applied for a reduction of the order, then it should not be necessary to issue process to bring him in when an increase is being requested.

The fundamental reason, of course, is that once the jurisdiction of a court attaches, it exists for all times until the cause is fully and completely determined. See: A.L.I., Restatement of Conflict of Laws, Sec. 76. As stated by Mr. Justice HOLMES in *Michigan Trust Co. v. Ferry*, 228 U. S. 346, 353: "Ordinarily jurisdiction over a person is based on the power of the sovereign asserting it to seize that person and imprison him to await the sovereign's pleasure. But when the power exists and is asserted by service at the beginning of the cause or if the party submit to the jurisdiction in whatever form may be required, we dispense with the necessity of maintaining the physical power and attribute the same force to the judgment or decree whether the party remain within the jurisdiction or not. This is one of the

decencies of civilization that no one would dispute." The cause in support proceedings is the family relationship and it is never completely determined until that family relationship is ended. Consequently, the orders that are made are not final orders; they may be amended, changed, decreased, increased, as conditions may warrant. The courts in domestic relation proceedings, involving broken homes, are attempting to conserve family values, often to the extent of giving the offended parties, the wife and children, some measure of the support to which they would have been entitled had the relationship not been broken. That measure of support is dependent upon the family fortune. It is more in good times and less in times of adversity. So, therefore, the order may be decreased at the application of the husband or increased at the application of the wife in accordance with the conditions as proven to the court. Time and again our courts have held that the orders may be changed. A late statement is contained in *Com. ex rel. v. Barnes,* 140 Pa. Superior Ct. 397, at 399, where Judge RHODES said: "We have frequently stated that orders in non-support cases have never been regarded as final, in as much as they may be increased, reduced, or vacated where the financial condition of the parties changes, or where other proper reasons are shown. *Com. ex rel. v. Crabb,* 119 Pa. Superior Ct. 209, 210; *Com. ex rel. v. Isaacs,* 124 Pa. Superior Ct. 450, 455; *Com. ex rel. v. Shotz,* 130 Pa. Superior Ct. 561, 564." See also: *Com. ex rel. v. Camp,* 146 Pa. Superior Ct. 24; *Com. ex rel. v. Binney,* 146 Pa. Superior Ct. 374. Any doubt if there could be any is dispelled by the Act of June 19, 1939, P. L. 440, 17 P.S. 263, which provides: "Any order heretofore or hereafter made by any court of this Commonwealth for the support of a wife, child or parent, may be altered, repealed, suspended, increased, or amended, and the said court may, at any time, remit, correct or reduce the amount of any arrearages, as the case may warrant."

The changed residence of the husband or the wife cannot oust jurisdiction once obtained. There should be no doubt about this in view of *Com. ex rel. v. Hawkins,* 80 Pa. Superior Ct. 520; *Com. ex rel. v. Shetzline,* 84 Pa. Superior Ct. 100; *Com. ex rel. v. Sanders,* 111 Pa. Superior Ct. 202; *Com. ex rel. v. Husinka,* 127 Pa. Superior Ct. 360.

There being jurisdiction it was not necessary to issue process of the court to bring the defendant in on supplementary proceedings. All that is required is reasonable notice of the proceedings to give an opportunity to be present and to be heard. The defendant admits that he received notice of the petition for increase by mail. And his presence to question the proceedings leaves out all doubt as to reasonable notice. In *Moore v. Field,* 42 Pa. 467, sufficiency of notice to defendants in Pennsylvania of proceedings in New York which had acquired jurisdiction was in question and the court said (p. 473) : "The fact that his notice reached them in Pennsylvania was not, in our judgment, a circumstance of any importance."

The authorities generally hold that jurisdiction once having been obtained in domestic relation actions, subsequent proceedings require only notice and a reasonable opportunity to be heard, which notice may be sent to the party outside of the State. *White v. White,* 65 N. J. Eq. 741; *Cowles v. Cowles,* 80 N. H. 530; *Morrell v. Morrell,* 83 Conn. 470; *McSherry v. McSherry,* 113 Md. 395.

*Ralph S. Croskey,* of *Croskey & Edwards,* for appellant.

*Charles J. Biddle,* with him *J. Horace Churchman,* for appellee.

PER CURIAM, May 8, 1942:

On February 11, 1942 the relatrix, Frederica L. Milne, obtained a rule in the municipal court upon her husband, Caleb J. Milne, 3d, this appellant, to show cause why an order of support entered against him on February 25, 1924—which had been reduced from time to time at his instance, the last reduction having been made by the court on March 23, 1936—should not be increased in consequence of a very considerable betterment of his financial condition, as a result of the death of his father—a man of large means—and the will of the latter bequeathing him one-third of the net income of a large trust estate.

The husband obtained a rule—under the Act of March 5, 1925, P. L. 23, 12 PS sec. 672, et seq.—to show cause why service of the said rule, and the petition on which it was based, should not be set aside and the rule discharged for want of jurisdiction, which the court, after hearing, discharged. The husband appealed.

The question involved is solely one of jurisdiction.

The opinion of the court below, the essential part of which will be printed in the reporter's statement, fully justifies the order appealed from.

To the citations contained in the opinion may be added the case of *Carey v. Carey,* 121 Pa. Superior Ct. 251, 183 A. 371, which supports the legal principle that where a court has acquired jurisdiction over a party to an action, a rule which is merely ancillary or auxiliary to that action may be served on him by any adult person, wherever he may be found, or by any method sufficient to give him actual notice of the petition and rule and reasonable opportunity to be heard upon it. See also, *In re Minor Children of Rosenthal,* 103 Pa. Superior Ct. 27, 30, 157 A. 342.

This, we may add, is especially the case in proceedings for support and maintenance under the Act of April 13, 1867, P. L. 78, and its amendments, in which the orders of the court are not irrevocably fixed and final, but are subject to be increased, reduced or vacated when the financial condition of the parties changes or other proper reasons exist.

For the reasons set forth in the court's opinion, as it appears in the reporter's statement, the order is affirmed at the costs of the appellant.